UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANGELA TORGERSON, an Individual,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Insurance Company, and Does I-X, inclusive,<br><br>　　　　　　　　　　　Defendants. | Case No. 3:21-cv-00452-LRH-CSD<br><br>ORDER |

Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm") moves this Court to grant partial summary judgment in its favor on the second and third causes of action in a complaint brought by Plaintiff Angela Torgerson ("Plaintiff"). ECF No. 69. Plaintiff opposed (ECF No. 75) and Defendant replied (ECF No. 87).[1] For the reasons contained within this Order, the Court denies Defendant's motion for partial summary judgment (ECF No. 69).

**I.    BACKGROUND**

This matter involves Plaintiff's insurance claim for underinsured motor vehicle ("UIM") benefits denied by Defendant. On October 7, 2019, Plaintiff was involved in a motor vehicle collision while driving a 2013 Toyota Tacoma. ECF No. 69-3. According to the police report, the collision occurred in Elko, Nevada, on S. Street and involved a four-vehicle pile-up. ECF No. 69-

---

[1] Originally, Defendant moved for summary judgment in its favor on each of the three causes of action in the complaint. ECF No. 69. When Plaintiff responded by requesting that the Court certify two questions of law to the Nevada Supreme Court, each of which pertained to Defendant's arguments as to Plaintiff's first cause of action, Defendant withdrew its arguments related to the requested certified questions and no longer moves for summary judgment on the first cause of action. *See* ECF No. 75 at 11; ECF No. 86. The Court denies Plaintiff's request to certify questions of law to the Nevada Supreme Court because those questions pertain to arguments which have been withdrawn and are no longer before the Court.

1

4. The driver of the first vehicle looked down to open a can of chewing tobacco and did not realize the traffic on S. Street had begun slowing in front of him. *Id.* The driver was unable to brake to avoid hitting the first vehicle. *Id.* The first vehicle then hit the second vehicle; the second vehicle hit the third vehicle; and the third vehicle hit the fourth vehicle—Plaintiff's Toyota Tacoma. *Id.* The estimates to repair the damage to Plaintiff's vehicle were $623.31 and $1,172.81. ECF Nos. 69-5, 75-2. The driver of the second vehicle was transported to the hospital after complaining of neck and back pain. ECF No. 69-4. No other injuries were reported to law enforcement by other drivers or passengers at the scene of the accident. *Id.*

In November 2019, State Farm notified Plaintiff that her "policy provides [m]edical [p]ayments [c]overage for reasonable expenses of necessary medical treatment resulting from injuries sustained in this accident . . . , [i]f it is determined that the other driver is not insured, or is underinsured, your [UIM] coverage may apply." ECF No. 69-5 at 14. In December 2019, Plaintiff's counsel requested that State Farm extend Plaintiff "whatever medical payments benefits are available under [her] policy" and notified State Farm that if the liable driver's "insurance limits are not sufficient to fully compensate [Plaintiff], [she] will make a claim under the [UIM] provisions of [her] policy." *Id.* at 17.

State Farm reimbursed Plaintiff for all of the medical payment coverage available under her policy—$5,000. ECF No. 75-1 at ¶ 25. The liable driver's insurer paid his bodily injury policy limit—$25,000—to settle Plaintiff's claim against him. ECF No. 69-6. In October 2020, Plaintiff's counsel notified State Farm of the settlement and Plaintiff's plan to pursue a UIM claim. ECF No. 69-5. The case manager for Plaintiff's counsel informed the State Farm claim specialist assigned to Plaintiff's UIM claim that Plaintiff was undergoing surgery for her spine at the end of October 2020. *Id.* In March 2021, State Farm notified Plaintiff's counsel that her UIM claim was denied "based upon [State Farm's] medical expert's medical records review as well as the mechanism of impact." *Id.* In August 2021, Plaintiff commenced this action against Defendant.

    A.    <u>Plaintiff's Medical History</u>

About one year before the subject accident, Plaintiff became an established patient with a chiropractor in Elko. ECF No. 69-7. The chiropractor began Plaintiff's treatment by inquiring into

her ability to "[e]xtended [c]omputer [u]se," sleep, statically sit, and function. *Id.* Plaintiff reported previously receiving chiropractic care and experiencing discomfort in her neck, midback, and left shoulder. *Id.* On the day of the subject accident, Plaintiff presented at the chiropractor for her weekly treatment. *Id.* Plaintiff returned for her weekly chiropractic treatment the following week without reporting any change in symptoms since her last visit and continued to receive weekly spinal adjustments into March 2020. *Id.*

In October 2019, Plaintiff reported to her physician, i.e., general practitioner, that she was experiencing intermittent pain in her thoracic and lumbar spine as well as numbness or tingling following the subject accident. ECF No. 69-8. While following up with her general practitioner in November 2019, Plaintiff reported continued back pain aggravated by working, bending, and lifting. *Id.* After Plaintiff's physical examination resulted positive for back pain and negative for neck pain, the general practitioner referred her to obtain a lumbar and thoracic MRI scan. *Id.* In December 2019, Plaintiff presented at a neurosurgery organization where Christopher Demers, M.D., examined her. ECF No. 69-9. Dr. Demers reviewed the MRI scan and found the results pertaining to Plaintiff's lumbar spine were normal and the results pertaining to her thoracic spine showed some mild disc bulges and minimal degenerative changes. *Id.* He did not find that Plaintiff needed surgical intervention or any restrictions at that time. *Id.*

In February 2020, Plaintiff complained to her general practitioner of neck and midthoracic pain with tingling. ECF No. 69-8. She was subsequently scheduled for a cervical MRI scan. *Id.* After Plaintiff reported that her chiropractic treatment was not helping, she was referred to physical therapy. *Id.* Shortly thereafter, Plaintiff began physical therapy on a bi-weekly basis into July 2020. ECF No. 69-10. In February 2020, Plaintiff also returned to Dr. Demers, presenting with neck pain. ECF No. 69-9. He recommended that surgery not be considered until Plaintiff exhausted all nonoperative measures. *Id.* He advised that Plaintiff attend six physical therapy sessions before returning and, if needed, try steroid injections. *Id.* In April 2020, Plaintiff reported that her neck pain was significantly improved during a followed-up appointment with Dr. Demers. *Id.* Dr. Demers recommended continuing to manage her symptoms nonoperatively and a follow-up appointment in three months. *Id.*

In June 2020, Plaintiff presented at a surgical consultation with James Rappaport, M.D. ECF No. 69-11. He reviewed Plaintiff's cervical MRI scan, which occurred on February 5, 2020, and noted disc protrusion at the C5-6 and C6-7. *Id.* He concluded that, "[a]t the time, surgery is certainly not mandatory . . . , [s]he can continue with nonoperative treatment to include [physical therapy, and] [i]f her symptoms continue to improve, she may not require surgical intervention." *Id.* In July 2020, Plaintiff received medical care at a hospital for injuries after she fell off a horse. ECF No. 69-12. According to medical records, Plaintiff reported pain in the back of her neck and lower back after she fell off of a horse and "hit the back of her head and lower back." *Id.*

In September 2020, Plaintiff presented at a follow-up surgical consultation with Dr. Rappaport. ECF No. 69-13. He recapped that, in June 2020, he told Plaintiff that, while surgery was not mandatory, "if her symptoms persisted or increased, then she would be a candidate for" surgery. *Id.* Plaintiff's symptoms did persist, and on September 24, 2020, Dr. Rappaport opined:

> [Plaintiff] has now had over 40 chiropractic treatments. She has had four months of physical therapy. She has had modified activity and she has modified her home activities. Despite this, her pain levels are increasing. She is now unable to get a proper night's sleep and her pain is increasing.

*Id.* He further opined that Plaintiff's "neck pain [had] become intractable, radiating into the left trapezius and left arm. This occurred as a result of [the October 7, 2019], motor vehicle accident." *Id.* Finally, Dr. Rappaport concluded that surgical treatment was appropriate at that time. *Id.*

Per Dr. Rappaport's recommendation, Plaintiff agreed to proceed with a microscopic anterior cervical discectomy and fusion at her C5-6 and C6-7, which Dr. Rappaport performed in October 2020. *Id.* In November 2020, Plaintiff resumed physical therapy and received treatment through January 2021. ECF No. 69-10. In February 2021, Dr. Rappaport discharged Plaintiff from his care. ECF No. 69-13. In her initial disclosures, Plaintiff alleges that she incurred $176,761.96 in past medical expenses. ECF No. 69-11.

B.   Plaintiff's UIM Claim

At the time of the subject accident in October 2019, Plaintiff had a UIM policy with State Farm under which State Farm insured Plaintiff for $100,000 of coverage for each underinsured person. ECF No. 69-14. In November 2019, Plaintiff informed State Farm that she was pursuing

a bodily injury claim with the liable driver's insurer. ECF No. 69-5. State Farm then sent Plaintiff a letter, stating in relevant part, "[i]f it is determined that the other driver is not insured, or is underinsured, [Plaintiff's UIM] coverage may apply." *Id.* In December 2019, State Farm also acknowledged a letter of representation it received from Plaintiff's counsel notifying State Farm of a potential UIM claim by Plaintiff. *Id.*

After State Farm reimbursed Plaintiff for all of the medical payment coverage available under her policy—$5,000—Plaintiff's counsel notified State Farm of the settlement with the liable driver's insurer and reiterated Plaintiff's plan to pursue a UIM claim in October 2020. *Id.*; ECF No. 75-1 at ¶ 25. State Farm's claim specialist assigned to Plaintiff's UIM claim was informed that Plaintiff would be undergoing surgery for her spine at the end of October 2020. *Id.* After State Farm's claim specialist contacted the liable driver's insurer, he learned that Plaintiff did not pursue any property damage claim with that insurer to repair her vehicle. *Id.* The claim specialist suggested to the State Farm team manager that a records review be conducted, and State Farm requested all of Plaintiff's prior medical records from the previous five years. *Id.* In the letter, State Farm explained that it required the records to "understand the necessity for the surgery in relation to the severity of the impact sustained by [Plaintiff's] vehicle" because, "[a]fter reviewing the estimate and photos of the damages sustained to [Plaintiff's vehicle], there didn't appear to be very extensive damage." *Id*

After receiving the requested medical records, State Farm's team manager authorized the claim specialist to retain one of State Farm's Nevada panel counsel to arrange a records review by an orthopedic surgeon. *Id.* The claim specialist did so by retaining Emerson Law Group. *Id.* Emerson Law Group retained an orthopedic surgeon in Nevada, Daniel D. Lee, M.D, to conduct the records review. Based upon Plaintiff's medical records, photos of her vehicle after the subject accident, and the traffic accident report prepared by the Elko Police Department, Dr. Lee concluded that Plaintiff "did not sustain abnormal injury from the subject [accident]." ECF No. 69-15. In February 2021, State Farm's claim specialist examined the records review prepared by Dr. Lee and relayed it to the team manager, State Farm then determined that Plaintiff had been fully indemnified by the liable driver's insurer. ECF Nos. 69-5, 69-15. In March 2021, State Farm

notified Plaintiff's counsel that its medical expert determined none of Plaintiff's treatment related to the subject accident, whatsoever. ECF No. 69-5. The notice then informed Plaintiff's counsel that Plaintiff's UIM claim was denied "based upon [State Farm's] medical expert's medical records review as well as the mechanism of impact." *Id.*

In August 2021, Plaintiff commenced this action against Defendant, asserting three causes of action: (1) breach of contract; (2) violation of the Nevada Unfair Claims Practices Act; and (3) breach of the covenant of good faith and fair dealing. The Court now addresses Defendant's motion for summary judgment in its favor on Plaintiff's second and third causes of action.

## II.  LEGAL STANDARD

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect

the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient" to establish a genuine dispute; "there must be evidence on which the jury could reasonably find for the [party]." *Id.* at 252.

### III.    DISCUSSION

#### A.    The Nevada Unfair Insurance Practices Act

Defendant moves for summary judgment on Plaintiff's second cause of action. ECF No. 69 at 21–25. Under her second cause of action, Plaintiff claims that Defendant violated the Nevada Unfair Insurance Practices Act (the "Unfair Practices Act"). ECF No. 69-3 at 4. The Unfair Practices Act prohibits insurance companies from engaging in more than a dozen unfair trade practices when handling insurance claims and creates a private right of action for an insured claiming violations by an insurer. *See* NRS § 686A.310. Under NRS § 686A.270, "[n]o insurer shall be held guilty [of violating the Unfair Practices Act] unless an officer, director or department head of the insurer has knowingly permitted such act or has had prior knowledge thereof."

Defendant argues that, as a matter of law, Plaintiff cannot show that one of State Farm's officers, directors, or department heads was aware of the alleged violations of the Unfair Practices Act. ECF No. 69 at 21–25. However, in the context of Defendant's motion for summary judgment, Defendant's argument fails to demonstrate that it is entitled to judgment as a matter of law. When a court addresses a motion for summary judgment, the court places the initial burden of production and the ultimate burden of persuasion on the moving party; even when that party does not carry the ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (internal citations omitted). The moving party may satisfy its burden of persuasion by "persuad[ing] the court that there is no genuine issue of material fact." *Id.* (internal citation omitted). The moving party may satisfy its burden of production by "either produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or

show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* (internal citation omitted). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03 (internal citations omitted).

Here, Defendant fails to satisfy both its burden of persuasion as well as its burden of production. First, Defendant fails to persuade the Court that there is no genuine issue of material fact. Defendant argues that "[t]here is simply no evidence that State Farm violated the Unfair [] Practices Act." ECF No. 69 at 23–25. Defendant attempts to support this argument by asserting that "[i]t is insufficient to make a blanket assertion that Defendant violated the Unfair [] Practices Act but fail to indicate which provision of the Act Defendant allegedly violated." *Id.* at 24 (cleaned up). However, Plaintiff has not merely made a blanket assertion that Defendant violated the Unfair Practices Act. Rather, Plaintiff indicates which provision of the Unfair Practices Act Defendant allegedly violated by arguing that "[t]here are issues of fact as to [State Farm's] violation of [NRS §] 686A.310(1)(e)." ECF No. 75 at 29. Under § 686A.310(1)(e), it is unfair trade practice for an insurance company to fail "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Plaintiff then relies upon testimony provided by her expert witness outlining the basis for his opinion that State Farm violated § 686A.310(1)(e). *See* ECF No. 75 at 29. Plaintiff's expert witness opines that State Farm violated § 686A.310(1)(e) when it relied upon the medical expert it retained, Dr. Lee, to deny Plaintiff's entire UIM claim because Dr. Lee determined that none, at all, of Plaintiff's treatment related to the subject accident. *See* ECF No. 75-12 at 52; *see also* ECF Nos. 69-5, 69-15.[2] Therefore, Defendant's argument that Plaintiff made an insufficient, blanket assertion that Defendant violated the Unfair Practices Act fails. Thus, without more, Defendant fails to persuade the Court that there is no genuine issue of material fact.

---

[2] The Court notes that Plaintiff's expert witness also outlined the basis for his opinion that State Farm violated NRS § 686A.310(1)(g), which provides that it is unfair trade practice for an insurance company to attempt to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application." *See* ECF No. 75-12 at 52.

8

Additionally, Defendant fails to satisfy its burden of production. Defendant has not produced any evidence negating an essential element of Plaintiff's Unfair Practices Act claim. Rather, in an attempt to show that Plaintiff does not have enough evidence of an essential element to carry her ultimate burden of persuasion, Defendants argue that Plaintiff cannot show that one of State Farm's officers, directors, or department heads was aware of the alleged violations of the Unfair Practices Act based upon numerous citations Defendant provides to opinions issued by District Courts for the United States District of Nevada.[3] ECF No. 69 at 22–25 (citing *Starr Indem. & Liab. Co. v. Young*, 379 F.Supp.3d 1103 (D. Nev. 2019); *Skinner v. GEICO Cas. Ins. Co.*, No. 2:16-cv-00078-APG-NJK, 2018 WL 1075035, at *7 (D. Nev. 2018); *Yusko v. Horace Mann Servs. Corp.*, No. 2:11-cv-00278-RLH-GWF, 2012 WL 458471, at *1 (D. Nev. 2012)). Defendant also provides a citation to an unpublished opinion issued by the United States Court of Appeals for the Ninth Circuit. *Id.* at 22 (citing *McCall v. State Farm Mut. Auto. Ins. Co.*, 799 Fed. Appx. 513, 514 (9th Cir. 2020)).

But in the context of Defendant's motion for summary judgment, Defendant's reliance on nonprecedential opinions issued by courts that this Court is not required to follow does not satisfy Defendant's burden to show that, as a matter of law, Plaintiff does not have enough evidence of an essential element to carry her ultimate burden of persuasion. *See* Ninth Circuit Rule 36-3(a) ("Unpublished dispositions and orders of [the Ninth Circuit] are not precedent . . .").[4] By

---

[3] For example, Defendant asserts that it is entitled to judgment as a matter of law because, in the past, District Courts for the United States District of Nevada have not recognized the "Claims Teams Managers" of the insurer as the requisite officer, director, or department head necessary to hold an insurer liable. ECF No. 69 at 22–25 (citing *Hackler v. State Farm Mut. Auto. Ins. Co.*, 210 F. Supp. 3d 1250, 1255 (D. Nev. 2016); *Goodrich v. Garrison Prop. & Cas. Ins. Co.*, 526 F.Supp.3d 789 (D. Nev. 2021)).

[4] While the opinions cited by Defendant do not satisfy its burden of production in the context of summary judgment, the opinions are sufficiently persuasive to refute Plaintiff's broad assertion that she is not required to show, at any point during trial, that an officer, director or department head of State Farm was aware of the alleged violations of the Unfair Practices Act because NRS § 686A.270 does not apply to civil actions since the word "guilty" is associated with criminal liability. *See* ECF No. 75 at 25; *My Left Foot Children's Therapy, LLC v. Certain Underwriters at Lloyd's London*, No. 2:15-cv-01746-MMD-VCF, 2021 WL 1093094, at *5 (D. Nev. 2021) (rejecting the argument that NRS § 686A.270 does not apply to civil actions since the word "guilty" is associated with criminal liability because "[b]ased upon a plain reading . . . , it unambiguously applies to both criminal and civil matters . . .").

9

definition, in the context of case law, a matter of law requires legally binding, mandatory precedent, which Defendant has not produced to support its argument.

In sum, in the context of Defendant's motion for summary judgment, Defendant has failed to establish that it is entitled to judgment as a matter of law. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's Unfair Practices Act claim, and Defendant's motion to dismiss is denied as it relates to Plaintiff's second cause of action.

### B. The Implied Covenant of Good Faith and Fair Dealing

Defendant moves for summary judgment on Plaintiff's third cause of action. ECF No. 69 at 25–27. Under her third cause of action, Plaintiff claims that Defendant violated the implied covenant of good faith and fair dealing (the "Implied Covenant"). ECF No. 69-3 at 4. Defendant argues that it is entitled to summary judgment on Plaintiff's Implied Covenant claim because, as a matter of law, Plaintiff cannot prove that State Farm had no reasonable basis for disputing coverage, and that it knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage. ECF No. 69 at 25–27.

Under Nevada law, the Implied Covenant arises out of every contractual relationship when "there is a special relationship between the victim and tortfeasor." *Ins. Co of the West v. Gibson Tile Co., Inc.*, 122 Nev. 455, 461 (Nev. 2006) (citing *K Mart Corp. v. Ponsock*, 103 Nev. 39, 49 (Nev. 1987)).[5] The Implied Covenant allows a party to a contract to seek damages when the other party does not act in good faith by performing "in a manner that is unfaithful to the purpose of the contract and the justified expectation of the other party are thus denied." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 234 (Nev. 1991). In the context of insurance, "[a] consumer buys insurance for security, protection, and peace of mind." *Albert H. Wohlers & Co. v. Bartgis*, 114 Nev. 1249, 1258 (Nev. 1998) (per curiam), *as amended* (Feb. 19, 1999) (internal quotation marks and citation omitted). "While an insured assumes various duties under an insurance contract—such as the timely payment of premiums—the insurer assumes the

---

[5] Nevada law recognizes a special relationship between Plaintiff and State Farm. *See Allstate Ins. Co. v. Miller*, 125 Nev. 300, 311 (Nev. 2009) (explaining that a special relationship exists between an insurer and its insured).

concomitant duty to negotiate with its insureds in good faith and to deal with them fairly." *Id.* (internal quotation marks and citation omitted).

An insurer breaches the Implied Covenant when it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate the insured for a loss covered by the policy. *Aluevich v. Harrah's*, 99 Nev. 215, 217 (Nev. 1983) (internal citation omitted). "To establish a prima facie case of bad-faith refusal to pay an insurance claim, the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage." *Powers v. United Serv. Auto. Ass'n*, 114 Nev. 690, 702–03 (Nev. 1998) *opinion modified on denial of reh'g*, 115 Nev. 38 (Nev. 1999) (modifying on an unrelated ground) (internal citation omitted). Consequently, a bad-faith refusal to pay an insurance claim does not occur when the insurer disputed the coverage as the result of an honest mistake, incorrect judgment, or negligence. *See id.* "However, a jury question on insurer's bad faith arises when relevant facts are in dispute or when facts permit differing inferences as to the reasonableness of insurer's conduct." *United Fire Ins. Co. v. McClelland*, 105 Nev. 504, 510–11 (Nev. 1989) (internal citation omitted).

Here, when viewing the record in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the Court finds that facts permit differing inferences as to the reasonableness of State Farm's conduct. For example, facts permit differing inferences as to whether State Farm's handling of Plaintiff's UIM claim was reasonable. Shortly after the subject accident, Plaintiff informed State Farm that she was pursuing a bodily injury claim with the liable driver's insurer. ECF No. 69-5. At that time, State Farm acknowledged that Plaintiff's "reasonable expenses of necessary medical treatment resulting from injuries sustained in [the subject accident]" may apply under her medical payment coverage and, if the liable driver was underinsured, Plaintiff's UIM coverage may apply. *Id.* at 14. Soon thereafter, Plaintiff's counsel requested "whatever medical benefits [were] available under [her] policy" and informed State Farm of a potential UIM claim by Plaintiff. *Id.* at 17. Plaintiff received medical treatment, and State Farm reimbursed her pursuant to the medical payment coverage available under Plaintiff's policy. ECF

No. 75-1 at ¶ 25. Yet, when Plaintiff notified State Farm of the settlement with the liable driver's insurer and her counsel reiterated Plaintiff's plan to pursue a UIM claim, State Farm expressed concern because "[a]fter reviewing the estimate and photos of the damages sustained to [Plaintiff's vehicle], there didn't appear to be very extensive damage." ECF No. 69-5.

State Farm expressed this concern centered on the scale of the damage to Plaintiff's vehicle nearly one year after the subject accident in which the damage occurred. State Farm did not express this concern when it acknowledged that Plaintiff's medical payment and UIM coverages may apply after she initially informed State Farm that she was pursuing a bodily injury claim. Nor did it express any concern centered on the scale of the damage to Plaintiff's vehicle when her counsel informed State Farm that Plaintiff may pursue a UIM claim depending on that outcome of the bodily injury claim or after State Farm reimbursed Plaintiff for "reasonable expenses of necessary medical treatment resulting from injuries sustained in [the subject accident]" under her medical payment coverage.[6] It would be reasonable to argue that State Farm's concern with the scale of damage to Plaintiff's vehicle would have been apparent well before October 2020 and, given State Farm's awareness of a pending UIM claim, failing to express this concern at an early date was unreasonable. State Farm may assert that it did not express this concern until it became aware of Plaintiff's scheduled surgery or the fact that Plaintiff did not pursue any property damage claim with the liable driver's insurer to repair her vehicle. Yet, the facts upon which those assertions rely are examples of facts which permit differing inferences as to the reasonableness of State Farm's conduct.

---

[6] Defendant asserts that "[t]he payment of [medical payment coverage] benefits to Plaintiff had no impact on the handling of her UIM claim" because medical payment coverage and UIM coverage "are separate and distinct coverages." ECF No. 87 at 6. Defendant also asserts that the "coverages are treated and regulated differently" under Nevada law. *Id.* (citing *Wingco v. Gov't Emps. Ins. Co.*, 130 Nev. 177, 181 (2014); *Walker v. State Farm Mut. Auto. Ins. Co.*, 259 F.Supp.3d 1139, 1145 (D. Nev. 2017)). But Defendant's assertions are misplaced. Defendant's citations as well as Defendant's assertions are inapposite to the issue currently before the Court and do not mean that the Court should completely disregard the fact that Defendant reimbursed Plaintiff for medical expenses pursuant to her medical payment coverage. Plaintiff does not argue that the coverages are the same or rely on any such inference. Rather, Plaintiff argues that it is unreasonable to reimburse her for "reasonable expenses of necessary medical treatment resulting from injuries sustained in [the subject accident]" under her medical payment coverage while simultaneously denying her UIM claim, in part, because State Farm's medical expert determined that none, at all, of Plaintiff's medical treatment related to the subject accident.

Finally, facts also permit differing inferences as to whether State Farm's evaluation of Plaintiff's UIM claim was reasonable. Shortly after the subject accident, Plaintiff reported to her physician that she was experiencing intermittent pain in her spine. ECF No. 69-8. After she reported that she continued to experience back pain aggravated by working, bending, and lifting, Plaintiff's physician referred her to obtain a lumbar and thoracic MRI scan. *Id.* Dr. Demers reviewed the MRI scan, found the results pertaining to Plaintiff's thoracic spine showed some mild disc bulges and minimal degenerative changes, and opined that Plaintiff did not need surgical intervention or any restrictions at that time. ECF No. 69-9. As time passed, Plaintiff complained of neck pain, i.e., cervical pain, to her physician as well as Dr. Demers, and she obtained a cervical MRI scan. ECF Nos. 69-8, 69-9. At that time, Dr. Demers recommended nonoperative measures before considering surgery. ECF No. 69-9. Dr. Rappaport subsequently reviewed Plaintiff's cervical MRI scan, noted disc protrusion at the C5-6 and C6-7, and concluded "[a]t the time, surgery is certainly not mandatory . . . , [s]he can continue with nonoperative treatment to include [physical therapy, and] [i]f her symptoms continue to improve, she may not require surgical intervention." ECF No. 69-11. Plaintiff participated in regular physical therapy as well as chiropractic treatment. ECF Nos. 69-7, 69-10. But when Plaintiff later presented at a follow-up surgical consultation with Dr. Rappaport, he concluded that Plaintiff's neck pain occurred as a result of the subject accident and surgical treatment was appropriate at that time given Plaintiff's increased symptoms since the earlier consultation. ECF No. 69-13. Per Dr. Rappaport's recommendation, Plaintiff received surgery at her C5-6 and C6-7 cervical vertebra in her spine, and her medical expenses now exceed $176,761. *Id.*; ECF No. 69-11.

Based exclusively upon a records review, the medical expert retained by State Farm, Dr. Lee, concluded on February 9, 2021, that none, at all, of Plaintiff's treatment related to the subject accident. ECF Nos. 69-5, 69-15. State Farm then informed Plaintiff's counsel that her UIM claim was denied, in part, "based upon [State Farm's] medical expert's medical records review . . . ." ECF No. 69-5. It would be reasonable to argue that State Farm's degree of reliance on its medical expert's medical records review was unreasonable given the scope of Dr. Lee's opinion. Dr. Lee opined that none, at all, of Plaintiff's treatment related to the subject accident while Plaintiff's

treating physician, Dr. Rappaport—who treated Plaintiff over the period from June 2020 through February 2021—opined that Plaintiff's neck pain and surgery occurred as a result of the subject accident.[7] Additionally, State Farm reimbursed Plaintiff for "reasonable expenses of necessary medical treatment resulting from injuries sustained in [the subject accident]" under the full limits of her medical payment coverage.

While State Farm informed Plaintiff's counsel that her UIM claim was denied, in part, "based upon . . . the mechanism of impact," the record contains little evidence concerning any evaluation of "the mechanism of impact" by State Farm. *See* ECF No. 69-5. Thus, State Farm's degree of reliance on the "mechanism of impact," "severity of the impact sustained to [Plaintiff's] vehicle" or "the estimate and photos of the damages sustained to [Plaintiff's vehicle]" could also be issues of reasonability that permit differing inferences. *See id.*

In sum, when viewing the record in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the Court finds that facts permit differing inferences as to the reasonableness of State Farm's conduct. Therefore, a jury question on bad faith arises. *See United Fire Ins. Co.*, 105 Nev. at 510–11. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's Implied Covenant claim, and Defendant's motion to dismiss is denied as it relates to Plaintiff's third cause of action.

## IV.  CONCLUSION

In conclusion, Defendant fails to demonstrate that it is entitled to judgment as a matter of law, and genuine disputes of material fact between the parties preclude summary judgment at this early stage.

---

[7] To be clear, the Court is not concluding that State Farm's conduct was unreasonable because it must give entirely equal consideration to the competing medical data. *See Basu v. Mass. Mut. Life Ins. Co.*, No. 2:20-cv-1432-JCM-BNW, 2023 WL 1765676, *6 (D. Nev. 2023) ("[T]he fact that defendant came to a different conclusion than plaintiff's doctors does not mean that defendant 'failed to consider' plaintiff's evidence; it means that it interpreted the evidence differently"); *Ortiz v. USAA Cas. Ins. Co.*, 2:23-cv-00554-GMN-EJY, 2023 WL 6849322, *6 (D. Nev. 2023) ("[P]ast decisions by this Court have recognized that an insurer's duty to equally consider the insured's interests alongside its own interests does not require it to give equal consideration to the insurer's and the insured's competing medical data" (internal quotation marks and citation omitted)). The Court merely finds that, when viewing the record in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, facts permit differing inferences as to the reasonableness of State Farm's conduct.

14

   IT IS THEREFORE ORDERED that Defendant's motion for partial summary judgment in its favor on Plaintiff's second and third causes of action (ECF No. 69) is **DENIED**.

   IT IS FURTHER ORDERED that, pursuant to L.R. 26-1(b)(5), the parties' Proposed Joint Pretrial Order shall be filed on or before June 27, 2024.

   IT IS SO ORDERED.

   DATED this 28th day of May, 2024.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE